**Cooper Brinson**, OSB # 153166
Email: cooper@brinson-law.com
Brinson Law LLC
259 E. 5th Ave., Suite 200-F
Eugene, OR 97401
Telephone: (541) 600-0906
Fax: (541) 972-8863
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| ERIC W. HOWANIETZ<br><br>Plaintiff,<br><br>v.<br><br>CITY OF EUGENE, a municipal corporation; SARAH MEDARY; WILLIAM SOLESBEE; CRAIG WRIGHT; CHARLES SALSBURY; and CHRIS SKINNER;<br><br>Defendants. | Case No. 6:22-cv-00788<br><br>**COMPLAINT**<br><br>Civil Rights (42 U.S.C. § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF, Eric Howanietz, by and through his attorney, Cooper Brinson, for his Complaint against Defendants, alleges:

**I. INTRODUCTION**

1. This is a civil rights action arising under Title 42 of the United States Code, Section 1983. Plaintiff brings this action for damages against Defendants after Defendants violated the First, Fourth, and Fourteenth Amendment rights of Plaintiff on May 31, 2020. In the course of violating Plaintiff's rights, Defendants, without legal justification, used chemical and impact

Page 1 -- COMPLAINT

munitions such as tear gas and 40mm "foam" or "sponge" rounds on unarmed and non-violent people and people on private property, including Plaintiff. As a pretext to justify their attacks on local residents and protestors, the City implemented a series of unconstitutional curfews. Plaintiff now seeks compensation for damages caused by those unconstitutional actions, policies, and practices.

2.      On May 25, 2020, George Floyd, an African-American, was killed by a Minneapolis police officer, Derek Chauvin. Chauvin knelt on Mr. Floyd's neck for several minutes, ultimately resulting in Mr. Floyd's death. During that time, at least four other officers stood around and watched as Mr. Floyd begged for his life and cried out for his mom.

3.      Several weeks before Mr. Floyd was killed by police, Breonna Taylor, a Louisville, Kentucky, EMT (also African-American), was killed by plain-clothes police who broke into her home to execute a no-knock warrant.

4.      The killing of Mr. Floyd and Ms. Taylor unleashed a torrent of anger and frustration from people across the United States and the world. Millions have protested and demonstrated against the killings.

5.      In the U.S., protests following the deaths of Taylor and Floyd occurred in every state. Many of these demonstrations were attacked by police using a variety of implements, including tear gas grenades, OC spray/pepper balls, rubber bullets, and other projectiles.

6.      Eugene, Oregon, was home to several protests and demonstrations in the days after Mr. Floyd was killed.

7.      In response to these gatherings, the Eugene Police Department (EPD), like many police departments around the U.S., used indiscriminate and excessive force against demonstrators and, in some cases, non-demonstrators who were merely in the vicinity of demonstrations.

Page 2 -- COMPLAINT

8. The City of Eugene also responded to the demonstrations by implementing a series of unconstitutional curfews. These curfews provided a pretext for law enforcement to maraud around the City in several trucks and armored vehicles, shooting chemical and impact munitions at protestors, journalists, passersby, and residences, including people on private property who were lawfully permitted to be on such property. The unconstitutional curfews also resulted in the arrest of several people who were engaged in activity protected by the First Amendment, exempt from the curfews, or not even in a prohibited area during a time prohibited by the curfews.

## II.  JURISDICTION AND VENUE

9. This civil action arises under the Constitution and laws of the United States and this Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1342(a).

10. Venue is properly vested in the Court pursuant to 28 U.S.C. § 1391(b), because the actions giving rise to this complaint took place in the City of Eugene, Oregon, which is in this District, and Defendants are subject to personal jurisdiction in this District.

## III. PARTIES

11. Plaintiff Eric W. Howanietz was, at all relevant times, a resident of Eugene, Oregon.

12. Mr. Howanietz was assaulted by Defendants on May 31, 2020, as further described herein. Mr. Howanietz was also subject to a series of unlawful orders to disperse or otherwise vacate traditional and limited public forums under threat of force on May 31, 2020, thereby violating his rights granted by First and Fourteenth Amendments to the US Constitution.

13. Defendant City of Eugene is a political subdivision of the State of Oregon. The Eugene Police Department is a department or division of the City. Upon information and belief, each person who deployed tear gas or other chemical and/or impact munitions, or fired other projectiles at or towards human beings on May 31, 2020, was an agent or employee of the City of Eugene. Likewise, any law enforcement officer announcing the unlawful curfew imposed by

the City on May 31, 2020, and threatening force against people if such people did not comply with the unlawful curfew order, was an agent or employee of the City of Eugene.

14. On information and belief, each and every decision to use chemical and/or impact munitions or projectiles against Plaintiff on May 31, 2020, was the result of a policy decision of the City of Eugene.

15. On information and belief, each and every threat to use chemical and/or impact munitions or projectiles against Plaintiff on May 31, 2020, was the result of a policy decision of the City of Eugene.

16. Defendant Sarah Medary is the City Manager for the City of Eugene and an Oregon resident. On May 31, 2020, Defendant Medary was acting as Pro Tem City Manager for the City of Eugene. In consultation with the Eugene City Council, Medary made the final decision to declare a state of emergency and impose a curfew on May 31, 2020. Defendant Medary imposed the curfew based, in part, on the input and/or urging of Chief Skinner.

17. Defendant William Solesbee is a Sergeant employed by the Eugene Police Department. On May 31, 2020, Sgt. Solesbee shot 40mm impact rounds at Plaintiff while Plaintiff was lawfully present on the porch of a residence located at 1670 Alder Street, Eugene, OR 97401 ("Campbell Club"). Sgt. Solesbee hit Plaintiff with one or more of these rounds while Plaintiff was lawfully present at the private residence. Solesbee is legally responsible and liable for the incidents, injuries, and damages herein set forth, and proximately caused said incidents, injuries, and damages by reason his negligence, breach of duty, negligent supervision, management, or control, violation of Plaintiff's constitutional and legal rights, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission.

Page 4 -- COMPLAINT

18.     Defendant Craig Wright is a police officer employed by the Eugene Police Department. On May 31, 2020, Officer Wright shot projectiles at Plaintiff while Plaintiff was lawfully present on the porch of a residence located at 1670 Alder Street, Eugene, OR 97401 ("Campbell Club"). Officer Wright hit Plaintiff with one or more of these projectiles while Plaintiff was lawfully present at the private residence. Wright is legally responsible and liable for the incidents, injuries, and damages herein set forth, and proximately caused said incidents, injuries, and damages by reason his negligence, breach of duty, negligent supervision, management, or control, violation of Plaintiff's constitutional and legal rights, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission.

19.     Defendant Charles Salsbury is a Lieutenant employed by the Eugene Police Department. Defendant Salsbury authorized the use of force described herein, both directly and through delegation to Defendants Solesbee and Wright.

20.     Defendant Chief Chris Skinner is and was, at the time of the incidents described herein, the Chief of the Eugene Police Department. Chief Skinner asked Defendant Medary to issue the curfew(s), including the curfew(s) imposed on May 31, 2020. Chief Skinner was responsible for the implementation of the curfew(s) issued by Defendant Medary on May 31, 2020. Such implementation by Chief Skinner included the delegation of authority to Defendant Salsbury to authorize and/or implement use of force policies and practices related to the enforcement of the curfew(s), including the force that was used and threatened by Defendants Solesbee and Wright.

21.     In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

22.     In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

Page 5 -- COMPLAINT

23.     In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, or employee, and/or in concert with, each of the other Defendants.

## IV. BACKGROUND

24.     On May 31, 2020, the City of Eugene "enacted a temporary nighttime curfew in downtown Eugene from 9:00 p.m . . . through 6:00 a.m. June 1." "The curfew appli[ed] to the area from High Street to Monroe Street and from 14th Avenue to 4th Avenue." That curfew was announced on EPD's Facebook page just after 6:30 p.m. on May 31, 2020.



Area subject to the downtown administrative curfew on May 31, 2020.

25.     "This [curfew] was extended to apply citywide at 11:00 p.m.."[1] EPD's Facebook page announced the curfew at 11:08 p.m. Many people in Eugene did not receive any notice of the curfews.

---

[1] https://www.eugene-or.gov/civicalerts.aspx?aid=4397

Page 6 -- COMPLAINT

26.     The curfew did "not apply to credentialed media, people seeking emergency care, fleeing dangerous circumstances, sheltering in place, traveling to and from employment or making commercial deliveries."[2]

27.     "Violating the city's curfew order [was] a misdemeanor offense and [was] punishable by a fine up to $500 or confinement in jail up to 100 days, or both fine and imprisonment."[3]

28.     The City lacked legal authority to impose or declare punishment for violation of this curfew order. Likewise, Defendant Medary lacked legal authority to impose the curfew. Defendant Medary also did not have lawful authority to impose punishments for violations of the unlawful curfew order(s).

29.     Throughout the evening of May 31, 2020, Defendant Solesbee, Defendant Wright, and several other members of law enforcement marauded the streets of Eugene in armored vehicles and trucks, firing chemical and impact munitions at people who posed no physical threat to person or property, including Plaintiff, as discussed further herein. Defendants Solesbee and Wright unlawfully fired projectiles at and into homes and people legally present on the property of such homes.

30.     Defendants Solesbee and Wright attacked people, including Plaintiff, who were complying with the curfew, did not pose any threat to the officers or to any other person or property, and were lawfully exercising their First Amendment rights.

31.     The violent actions of the police also put the people of Eugene in fear, and gravely chilled them in their lawful constitutional rights to assemble, petition their grievances, and protest.

---

[2] https://www.eugene-or.gov/CivicAlerts.aspx?AID=4392&ARC=9123
[3] https://www.eugene-or.gov/civicalerts.aspx?aid=4397

Page 7 -- COMPLAINT

32. Prior to the curfew, the Defendants declared some gatherings as "unlawful" assemblies, ignoring the constitutional requirements to make or enforce such declarations.

33. Regardless of the legal status of the curfews (as will be determined by this Court), Defendants attacked people, including Plaintiff, at places and during times where either 1) no curfew was in effect, 2) it was not reasonable to expect people to be aware of the curfew, or 3) people were not given an opportunity to obey the curfew by leaving and/or going home; and where the police lacked any reasonable or legal basis to use projectiles and crowd control measures, and lacked probable cause for arrest of any offense that would justify the use of such projectiles and crowd control measures.

34. Broadly stated, there were two locations/incidents in which Defendants violated the rights of Plaintiff as set forth in detail below:

### 353 EAST BROADWAY to 14th AND PATTERSON STREET

35. On May 31, 2020, at or around 10:57 p.m., at or near the East side of the parking lot of 353 E. Broadway (Whole Foods) in Eugene, Oregon, Eugene Police, including Defendants Solesbee and Wright, confronted several people, including Plaintiff. At this time, demonstrators (including Plaintiff) were outside of the limited curfew zone imposed by Defendant Medary, implemented by Defendant Skinner, and enforced by other named Defendants.

36. At or just before 10:57 p.m., protestors were told by Eugene police personnel that the parking lot was private property and that they must move or face arrest.

37. Protestors, including Plaintiff, complied with Defendants' order.

38. Immediately thereafter, at 10:57 PM, Eugene police personnel informed protestors, including Plaintiff, via loudspeaker announcement, of the City-wide administrative curfew that was set to take effect three minutes later, at 11:00PM. This was the first notice of the unconstitutional curfew given to people in the area.

39.   This announcement failed to give Plaintiff and others adequate time or directions on how to comply with the unconstitutional curfew in that moment, though some, including Plaintiff, attempted to comply and began moving towards their home or other private spaces that demonstrators reasonably believed were safe.

40.   With less than three minutes warning, Eugene Police personnel announced that if anyone was outside after 11:00 p.m., they would be subject to arrest or chemical and impact munitions.

41.   Defendants' threat to deploy -- and ultimate deployment of-- chemical and impact munitions against people, including Plaintiff, on May 31, constituted cruel and unusual punishment and chilled the First Amendment rights of demonstrators (including Plaintiff). Defendants' extrajudicial punishment of people was far more extreme than any lawful sentence or punishment that could have been imposed for violating the curfew order (even if the curfew order was constitutional).

42.   Protestors, including Plaintiff, left the downtown area for fear of arrest or violent attack by Defendants.

43.   Plaintiff attempted to leave the area by walking and riding a bicycle down East Broadway toward Patterson Street.

44.   Eugene Police personnel followed the protestors, including Plaintiff, in a Lenco Bearcat, an armored vehicle resembling a military vehicle.

45.   Shortly after 11:00PM, Defendants Solesbee and Wright began shooting protestors with chemical and impact munitions.

46.   Multiple people were shot with their hands up, yelling "I'm going home, please don't shoot." Some people who were leaving the area were shot in the back.

47.   When Plaintiff and others arrived in a parking lot between campus and Alder St., near 14th Ave., Plaintiff was injured by tear gas that was unlawfully deployed by law enforcement.

48.	While Plaintiff was approximately twenty (20) to thirty (30) feet away from any other person, law enforcement threw or otherwise projected a tear gas cannister directly in front of Plaintiff.

49.	Plaintiff was injured as a result of his exposure to the tear gas.

50.	Defendant Salsbury authorized the use of tear gas, both directly and via delegation to law enforcement on scene in the parking lot.

### ALDER STREET BETWEEN 16th Ave. AND 17th Ave./ 1670 Alder Street; CAMPBELL CLUB

51.	After the city-wide curfew announcement, Plaintiff biked and walked toward campus because, as a student, he thought it would be a safe location. It was also in the direction of and near his residence. After being tear-gassed in the parking lot noted above, Plaintiff went to 1670 Alder Street ("Campbell Club") because he knew it was a safe place that he and others could go to flee the tear gas, projectiles, and other violence directed at him and others by Eugene Police personnel, including Defendants Solesbee and Wright.

52.	As Plaintiff was riding his bicycle to the Campbell Club, he observed law enforcement shooting projectiles at other people who were fleeing the parking lot noted above.

53.	Plaintiff arrived at the Campbell Club, knocked on the door, and was welcomed inside. Plaintiff put his bicycle inside of the Campbell Club and then went onto the porch of the Campbell Club to try to get other protestors and passersby inside and out of the harm created by law enforcement.

54.	At approximately 11:20 p.m., law enforcement personnel, including Defendants Solesbee and Wright, arrived in front of the Campbell Club and started shooting various chemical munitions and so-called "foam batons" at Plaintiff, at the residence, and at people lawfully on the property of the residence.

Page 10 -- COMPLAINT

55. Plaintiff was on the porch of the Campbell Club and was struck several times by so-called "pepperballs" shot by Defendant Wright, as well as by a 40mm round fired by Defendant Solesbee. Plaintiff had to lay on the ground behind pews on the porch to avoid being hit by the barrage of projectiles.

56. Defendants' actions damaged the Campbell Club. Besides breaking the door hinge, the chemical munitions fired at the windows of the residence caused the residence to fill with harmful chemicals, causing pain, discomfort, and injury to Plaintiff and others inside the residence.

57. Remnants of the chemical and impact munitions were left behind by Defendants at the Campbell Club as well another property adjacent to the Campbell Club.

58. Solesbee and Wright's indiscriminate and malicious use of chemical and impact munitions at the residence and Plaintiff was without provocation or legal justification and violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.

## VI. CAUSES OF ACTION

### FIRST CLAIM:
### MUNICIPAL AND SUPERVISORY LIABILITY (*Monell* - 42 U.S.C. § 1983)
### (First, Fourth, and Fourteenth Amendments to the U.S. Constitution)
### Against the City of Eugene

**Count 1: Municipal Liability – Curfews Violating Plaintiff's First and Fourteenth Amendment Rights**

59. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

60. The City of Eugene has an official practice, policy, or custom of using curfews to prohibit and prevent mass protests and other activity protected by the First Amendment.

61. There are two curfews challenged by Plaintiff: the downtown curfew imposed on May 31 at 9:00 p.m. and the city-wide curfew that was imposed at 11:00PM.

62. Defendant Medary issued each curfew, but in doing so deferred entirely to Defendant Skinner as to the scope and timing of each curfew, the need for each curfew, and how to implement each curfew.

63. Defendant Skinner requested the curfews and decided how to enforce the curfews.

64. Regarding the city-wide curfew, neither Medary nor Skinner provided for an exception for people who were trying to get home, did not allow adequate notice of the curfew, and did not allow adequate time for people to comply by getting home.

65. The curfew orders were not narrowly tailored to achieve a compelling interest. Nearly all activity -- protesting, assembling, traveling, walking, cycling, or simply being outside – was prohibited during each curfew.

66. Each curfew prohibited and suppressed far more speech, assembly, and other protected First Amendment activity than necessary.

67. Each curfew was, in effect, a prior restraint on free speech activity and assembly.

68. Each curfew lacked adequate notice as to both timing and method of notice to allow residents, including Plaintiff, time to comply.

69. The city-wide curfew order was announced in such a way that Plaintiff and others could not reasonably understand how to comply with the order.

70. Defendant Skinner said that the May 31 city-wide curfew "was not done in a timely fashion to allow for some of the compliance that [the EPD/City] needed."[4]

71. Any alleged property destruction that occurred May 29, 2020, did not justify the near-total prohibition on public activity. "Banning or postponing legitimate expressive activity

---

[4] https://www.oregonlive.com/crime/2020/06/eugene-police-chief-pledges-reaffirmation-to-police-reform-addresses-use-of-surveillance-drone-riot-control-measures-after-week-of-protests-began-with-rioting-looting.html

Page 12 -- COMPLAINT

because other First Amendment activity regarding the same subject has resulted in violence deprives citizens of their right to demonstrate in a timely and effective fashion." *Collins v. Jordan*, 110 F.3d 1363, 1371-72 (9th Cir. 1996).

72. Defendants could have used other significantly less-restrictive means of addressing any forms of property destruction that occurred during the protests. Defendants could have enforced "other laws at [their] disposal that would allow [them] to achieve [their] stated interests," including the criminal laws prohibiting damage to property and, if necessary as a last resort in narrowly defined circumstances, unlawful assembly. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011).

73. The city-wide curfew order that prohibited all speech and assembly activity in a city of over 170,000 was overbroad, and the Constitution does not permit such a total deprivation of liberty under the circumstances.

74. Because the curfew orders prohibited virtually all presence and movement in their applicable areas, they failed to allow for ample alternative channels of communication.

75. People who were supposedly exempt from the curfews were attacked and injured by police, including Defendants.

76. People, including Plaintiff, who complied with law enforcement orders regarding the curfew, were nevertheless attacked or arrested by Defendants or as part of Defendants' policy, practice, or custom regarding the enforcement of the curfew(s).

77. People, including Plaintiff, were attacked partly for their alleged violation of the curfew, even when they were in an area where no curfew was in effect; or were not given a reasonable opportunity to comply; or were complying with the unconstitutional curfew by either traveling home, being at home, or being legally present on the property of private residences.

78. Many police officers appeared gleeful and light-hearted while they attacked protestors on

Page 13 -- COMPLAINT

the night in question. Defendants' misconduct was particularly disturbing in light of the protests over State violence, police brutality, and the illegal murders of black Americans.

79. Defendants failed to provide appropriate methods, instruction, or guidance to officers responsible for enforcing the curfew, including how to determine whether a person was exempt from the curfew. This failure resulted in violations of Plaintiff's and others' rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.

80. Defendants failed to supervise and train their employees and agents with respect to First Amendment protected activity when such employees and agents are responsible for enforcing the curfews.

81. The policy, practice, and custom of Defendants City of Eugene, Medary, and Skinner, as well as their failure to train and supervise employees and agents, regarding the creation, implementation, and enforcement of the curfews, amounts to deliberate indifference to the rights of Plaintiff.

82. As a direct and proximate result of the actions and omissions described in this complaint, Plaintiff incurred noneconomic damages as alleged herein.

83. Plaintiff was required to hire an attorney to represent him in this matter and is thus entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## Count 2:
## Municipal Liability
### Unlawful Practice or Policy Allowing Indiscriminate Use of Force as a Tactic to Disperse Crowds in Violation of First, Fourth, and Fourteenth Amendments

84. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

85. The City of Eugene has an official policy allowing the use chemical and impact munitions against crowds or protestors whenever it determines that the crowd or protestors create a "civil disturbance." This policy permits law enforcement to use indiscriminate force against a

crowd of people in violation of the Fourth Amendment.

86. Defendants have a policy, practice, or custom of declaring activity protected under the First Amendment a "civil disturbance." Even if the policy regarding civil disturbances is constitutional, the actual practice and custom of the City and the Eugene Police Department is to allow the indiscriminate use of chemical and impact munitions against a crowd even when the crowd or a majority of the crowd have not committed a crime and do not pose a physical threat to law enforcement or others.

87. On May 31, 2020, EPD used chemical and impact munitions on protestors as well as passersby, and journalists, including Plaintiff. Defendants Solesbee and Wright also shot chemical and impact munitions at residences, including the Campbell Club, where Plaintiff was lawfully present. Plaintiff did not engage in any behavior that could possibly justify the use of chemical and impact munitions against him while he was in the parking lot described above or the Campbell Club.

88. The City tacitly and explicitly authorized the indiscriminate use of chemical and impact munitions against protestors and residents of Eugene, including Plaintiff, on May 31, 2020.

89. The authorization to use chemical and impact munitions on May 31 was part of a decision-making process "communicated up through chain of command" from officers in the field.[5]

90. The City, acting pursuant to this policy, practice, or custom, unlawfully used chemical and impact munitions against Plaintiff and others as alleged throughout this Complaint.

---

[5] https://www.oregonlive.com/crime/2020/06/eugene-police-chief-pledges-reaffirmation-to-police-reform-addresses-use-of-surveillance-drone-riot-control-measures-after-week-of-protests-began-with-rioting-looting.html

Page 15 -- COMPLAINT

91. Defendant City of Eugene has failed to properly train its officers, agents, and employees in how to address protests, protestors, mass protests, and has failed to properly train officer's to use an appropriate level of force; and/or has allowed numerous other similar incidents; and/or has a policy or practice of allowing that level of force; and/or has encouraged or acquiesced in this unlawful behavior, and/or tacitly encouraged or acquiesced in it by failing to train, supervise, or discipline their officers, thus evincing deliberate indifference to Plaintiff's constitutional rights, sufficient to support a verdict that those policies, customs, or practices caused the use of excessive force against Plaintiff.

92. Defendant City is directly liable to Plaintiff for its unconstitutional policies, customs, or practices; and/or for failing to properly train its officers.

93. As a direct and proximate result of the actions and omissions described in this complaint, Plaintiff incurred noneconomic damages alleged herein.

94. Plaintiff was required to hire an attorney to represent him in this matter and is thus entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM:

### FIRST & FOURTEENTH AMENDMENT – CURFEWS
### Violation of Free Speech and Assembly, 42 U.S.C. § 1983
### Defendants City of Eugene, Medary, and Skinner

95. Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

96. The limited, 9:00 p.m. curfew prohibited all protest and assembly activity within a significant portion of downtown Eugene.

97. The 11:00 p.m. city-wide curfew order prohibited all protest and assembly activity as well as other protected activity and, as such, is overbroad and unconstitutional.

98. Each curfew was an unreasonable time, place, and manner restriction on Plaintiff's First Amendment rights.

99. Each curfew punished more speech, assembly, and other protected activity than was necessary.

100. Each curfew chilled or attempted to chill the First Amendment activity of Plaintiff and others.

101. Each curfew lacked constitutionally sufficient notice to those subject to or impacted by the curfews, including Plaintiff.

102. Enforcement of each of the curfews enacted and implemented by Defendants violated the First Amendment rights of protestors, journalists, and Eugene residents, including Plaintiff.

103. Defendants Medary and Skinner violated rights held by Plaintiff which were clearly established, and no reasonable person similarly situated to these Defendants could have believed that such conduct was lawful or within the bounds of reasonable discretion. Defendants Medary and Skinner thus lack qualified or statutory immunity from suit or liability.

104. As a direct and proximate result of the policy and conduct of Defendants City of Eugene, Medary, and Skinner, Plaintiff suffered a severe curtailing of his First Amendment rights and is entitled to non-economic damages in a sum to be determined at trial.

105. The actions of Defendants were recklessly indifferent to Plaintiff's civil rights. As such, punitive damages should be awarded against the individual Defendants in a sum to be determined at trial.

106. Plaintiff was required to hire an attorney to represent him in this matter and is thus entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM:

### FIRST, FOURTH, and FOURTEENTH AMENDMENT - RETALIATION

**42 U.S.C. § 1983 against Defendants Solesbee and Wright**

107.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

108.    Plaintiff was engaged in constitutionally protected activity when Defendants Solesbee and Wright, acting or purporting to act in the performance of their official duties as law enforcement officers, pursuant to the orders and policies of Defendants City of Eugene, Medary, and Skinner caused Plaintiff to suffer injuries that would chill a person of ordinary firmness from continuing to engage in that activity. Upon information and belief, those actions and omissions, were substantially motivated by a desire to retaliate against Plaintiff's exercise of constitutionally-protected conduct as well as a desire to retaliate against Plaintiff for the actions of others.

109.    This retaliation was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiff's First, Fourth, and Fourteenth Amendment rights secured by the United States Constitution, and/or was done so wantonly or oppressively.

110.    As a direct and proximate result of the unconstitutional actions of Defendants City of Eugene, Medary, and Skinner, including the implementation and enforcement of the unconstitutional curfews, Plaintiff suffered injuries entitling him to recover compensatory and punitive damages.

### FOURTH CLAIM:

**FOURTH AND FOURTEENTH AMENDMENTS
EXCESSIVE FORCE AND
DELIBERATE INDIFFERENCE TO HEALTH AND SAFETY
42 U.S.C. § 1983
Defendants Solesbee, Wright, and Salsbury**

111.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully set forth here.

112. By their actions as described herein, Defendant Solesbee, Wright, and Salsbury, under color of statute, ordinance, regulation, custom, or order, subjected Plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution, namely, Plaintiff's rights to freedom from unreasonable seizure by the use of excessive force by using and threatening to use chemical and impact munitions against Plaintiff.

113. Defendants Solesbee, Wright, and Salsbury violated rights held by Plaintiff which were clearly established, and no reasonable official similarly situated as Defendants Solesbee, Wright, and Salsbury could have believed that their conduct was lawful or within the bounds of reasonable discretion. Defendants Solesbee, Wright, and Salsbury thus lack qualified or statutory immunity from suit or liability.

114. As a direct and proximate cause of the actions described herein, Plaintiff sustained economic and noneconomic damages, including physical pain and suffering all to an amount to be ascertained according to proof at trial.

115. The actions of Defendants Solesbee, Wright, and Salsbury, as described herein, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted against Plaintiff. As a result of this intentional conduct, Plaintiff is entitled to punitive damages against Defendants Solesbee, Wright, and Salsbury, in an amount sufficient to punish them and to deter others from like conduct.

116. Plaintiff was required to hire an attorney to represent him in this matter and is thus entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## **RELIEF REQUESTED**

Plaintiff respectfully request that this Court:

(a) Exercise jurisdiction over Plaintiff's claims and grant him a jury trial;

(b) Award Plaintiff non-economic damages in an amount to be ascertained according to

proof;

(c) Award Plaintiff punitive damages against the individual Defendants in an amount sufficient to punish them and deter others from like conduct;

(d) Award Plaintiff's reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988; and

(e) Grant Plaintiff such other and further relief as this Court deems just and appropriate, (including, if similar government behavior ensues, declaratory and injunctive relief).

DATED: May 31, 2022.

  /s/ Cooper Brinson
Cooper Brinson, OSB # 153166
Email: cooper@brinson-law.com
Brinson Law LLC
259 E. 5th Ave., Suite 200-F
Eugene, OR  97401
Telephone:  (541) 600-0906
Fax: (541) 972-8863
Attorney for Plaintiff